UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALGREEN CO.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COLLEGIUM PHARMACEUTICAL, INC.,<br><br>　　　　Defendant. | No. 25 CV 6560<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Walgreens purchased prescription medications through a wholesale distributor. This distributor contracted with defendant Collegium Pharmaceutical for the purchase of certain pain medications. Pursuant to Collegium's return policy, Walgreens used a reverse distribution company to return unused medication. Walgreens alleges that Collegium frustrated its returns, thus breaching the return policy, or, alternatively, leading to unjust enrichment in excess of $14 million. Defendant moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim. For the reasons discussed below, defendant's motion to dismiss is granted.

**I.    Legal Standards**

Federal Rule of Civil Procedure 12(b)(2) governs dismissals based on lack of personal jurisdiction. When a defendant challenges jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022). If the decision is based

solely on written materials without an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). All well-pleaded facts alleged in the complaint are taken as true and any factual disputes are resolved in plaintiff's favor. *Id.*

## II.     Background

Plaintiff Walgreen Co. provides consumer goods as well as pharmacy services through thousands of retail drugstores throughout the United States. [1] ¶ 3.[1] Walgreens is an Illinois corporation with its principal place of business in Illinois. [1] ¶ 3. Defendant Collegium Pharmaceutical Inc. develops and commercializes medications. [1] ¶ 4. Collegium is a Virginia corporation with its principal place of business in Massachusetts. [1] ¶ 4.[2]

Prescription medications are unusable after their expiration date. [1] ¶ 8. Manufacturers typically provide for the return or destruction of medications after or near expiry. [1] ¶ 8. The process of returning and receiving refunds or credits for expired or expiring pharmaceuticals is known as reverse distribution. [1] ¶ 8. Third-party reverse distribution companies facilitate the return process. [1] ¶ 9.

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of the filing. The facts are taken from the complaint, [1]; the evidence submitted by defendant in opposition to the exercise of jurisdiction, [9-1], [9-2], [9-3], [9-4], [9-5], and [9-6]; and the evidence submitted by plaintiff in response and in support of the exercise of jurisdiction, [16-1], [16-2], [16-3], and [16-4].

[2] The court has subject-matter jurisdiction over this case because the parties are diverse in citizenship and the amount in controversy exceeds $75,000. [1] ¶¶ 3–5; 28 U.S.C. § 1332(a)(1).

Walgreens bought many prescription medications through a wholesale distributor. [1] ¶ 13.[3] Walgreens's distributor contracted with Collegium for the purchase of certain medications, which it then resold to Walgreens. [1] ¶ 14. Walgreens has purchased medications from Collegium through its distributor since 2017. [1] ¶ 17.

Collegium published a return policy that allowed the return of medications it manufactured. [1] ¶ 18. This return policy was provided to Walgreens, who bought millions of dollars of medications in reliance on the policy. [1] ¶ 19. Collegium's return policy allowed pharmacies to return the products that they purchased through a distributor. [1] ¶ 23; [9-2] at 2. The policy specifically required that returnable products be sent to Collegium's reverse distribution company in Kentucky. [1] ¶ 25.[4] Walgreens used its own reverse distribution company to return unused prescription medications, [1] ¶ 32.[5]

Employees from Walgreens and Collegium exchanged hundreds of emails and met in Illinois on many occasions to discuss two medications that Walgreens purchased from Collegium. [16-2] ¶ 4. Some of these emails discussed Collegium's return policy. *See* [16-2].

---

[3] Cencora, Inc., Walgreens's wholesale distributor, is a Pennsylvania corporation with its principal place of business in Pennsylvania. [9-1] ¶ 4; [9-4].

[4] Integrated Commercialization Solutions, LLC, Collegium's reverse distribution company, is a California company with its principal place of business in Texas. [9-1] ¶ 8; [9-5]. The citizenship of ICS's members is not mentioned by either party.

[5] Inmar RX Solutions, Inc., Walgreens's reverse distribution company, is a Texas corporation with its principal place of business in North Carolina. [9-6].

Walgreens alleges that Collegium, through its reverse distributor, "began to frustrate and make it impossible" for Walgreens to return medications consistent with the terms of the return policy. [1] ¶ 37. Plaintiff claims that the return policy is a valid and enforceable contract and filed the present case alleging that defendant has breached this contract by failing to provide credit for plaintiff's returns. [1] ¶¶ 52–60. In the alternative, plaintiff brings a claim for unjust enrichment. [1] ¶¶ 61–64.

**III. Analysis**

Defendant moves to dismiss on two separate grounds. First, Collegium argues that the court lacks personal jurisdiction over it. In the alternative, defendant argues that even if personal jurisdiction were present, dismissal is nonetheless appropriate because plaintiff failed to state a claim under Rule 12(b)(6).

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003). The Illinois long-arm statute confers personal jurisdiction if "permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c); *see also J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020). Thus, the question is whether exercising personal jurisdiction on Collegium "comports with the limits imposed by federal due process." *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

Federal due process requires that a defendant have minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional

4

notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). For cases alleging a breach of contract, "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *Purdue Rsch.*, 338 F.3d at 781 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Rather, Illinois courts consider a variety of factors, including who initiated the transaction, where the contract was negotiated, where the contract was formed, and where performance of the contract was to take place. *See Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015).

Plaintiff asserts that both general and specific jurisdiction exist over defendant. [16] ¶ 8–9. General jurisdiction exists only where a defendant has "continuous and systematic general business contacts" with the forum. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)). Specific jurisdiction exists when defendant's "suit-related conduct creates a substantial connection with the forum state." *Walden*, 571 U.S. at 284.

### A. General Jurisdiction

Walgreens alludes to general personal jurisdiction over Collegium because "Collegium's Illinois contacts are systematic and continuous." [16] at 8. But to establish general jurisdiction, Walgreens must show that Collegium's contacts with Illinois are so extensive that Collegium "can be treated as present in the state for essentially all purposes." *uBid*, 623 F.3d at 425–26. Collegium is neither incorporated

5

in nor has its principal place of business in Illinois. Developing medications that may be distributed across the country does not mean that a company subjects itself to general personal jurisdiction in every state that it sends products (through intermediary distributors) to. Just because Collegium has some dealings in Illinois (whether through Walgreens or other potential customers) does not mean it is "at home" in Illinois for purposes of general jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014) (noting that a corporation's affiliation with the forum state must be "comparable to a domestic enterprise in that State" for general jurisdiction to exist). This court does not have general personal jurisdiction over Collegium.

### B. Specific Jurisdiction

Specific jurisdiction, by contrast, does not require systematic contacts with the forum state. Instead, specific jurisdiction analyzes the connection between the defendant, the forum, and the underlying controversy. *See Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 395 (7th Cir. 2020). Jurisdiction is proper when the defendant takes some act by which it "purposefully avails itself of the privilege of conducting activities with the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). The defendant's contacts with the forum state must be its own choice and not random or fortuitous. *Id.* And the litigation must arise out of or relate to those contacts. *B.D. ex rel. Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024).

Walgreens contends that Collegium is subject to specific jurisdiction in Illinois because Walgreens purchased the products at issue as a "direct result of years-long,

continuous outreach by Collegium to Walgreens." [16] at 8. Walgreens cites hundreds of communications directed to Walgreens in Illinois, meetings in Illinois, and a data license agreement between the parties governed by Illinois law as evidence of Collegium purposefully availing itself to the privilege of conducting business in Illinois. [16] at 8. But "in a breach of contract case, it is only the dealings *between the parties in regard to the disputed contract* that are relevant to minimum contacts analysis." *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012) (emphasis in original) (quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997)). Thus, plaintiff's declarations and exhibits that relate more broadly to Collegium's marketing practices, purchase of Walgreens's inventory data, product placement, and order history do not establish that Collegium is subject to personal jurisdiction with respect to the underlying controversy: the return policy.

The attached materials that directly touch upon this disputed (and alleged) contract do not amount to a prima facie showing of jurisdiction. Walgreens has not produced any evidence suggesting Collegium's contacts with Illinois involved negotiating or forming the return policy. Rather, the emails and phone calls between the parties took place *after* the policy existed. *See* [16-2] ¶ 35 (asking for a copy of the return policy rather than negotiating its terms); [16-2] ¶ 36 (clarifying the procedures that must be followed under the policy rather than amending its terms); [16-4] ¶ 7 (flagging that Collegium's agent was acting untimely rather than asking to modify the policy). Communicating with Collegium about the *subject matter* of the return policy is different from Collegium purposefully directing business activities into the

7

state where Walgreens is based with an expectation of being haled into Illinois. The correspondence about the return policy does not suggest that Collegium could envision continuing and wide-reaching contacts between itself and Illinois at the time of the policy's formation. *See Burger King*, 471 U.S. at 480.

Nor does the parties' course of dealings after the policy's formation establish that Collegium could expect to litigate issues over returns in Illinois. For example, when providing Walgreens with a copy of the return policy, Collegium noted that the policy was "for authorized distributors only," which did not include Walgreens. [16-3] at 150. In a separate email, Collegium informed Walgreens that it "[does] not have a return goods policy that covers expired returns from retailers." [16-3] at 157. And, in a more recent email, Collegium explained that it was Walgreens's chosen reverse distributor that was responsible for complying—and had failed to comply—with the terms of the return policy. [16-3] at 225. Indeed, the entire email chain provided in plaintiff's fourth attachment is titled "Inmar Returns," further supporting defendant's argument that it did not intend to perform under the return policy in the state where Walgreens was located. *See generally* [16-4]. Thus, in addition to lacking evidence that Collegium purposefully availed itself of Illinois law in the formation of the return policy, Walgreens has also failed to produce evidence that Collegium expected to perform the return policy in Illinois.

The phone calls and in-person meetings fare no better. Walgreens has not alleged that Collegium representatives traveled to Illinois to negotiate or form the return policy. Indeed, Walgreens has been purchasing medications from Collegium

since 2017, and the first mention of a return policy seems to have occurred in January 2018 (after the business relationship between the parties began and presumably after the return policy was negotiated and formed). *See* [16-2] ¶ 35.

The ongoing business relationship between the parties over drugs that may need to be returned under the policy does not cure the defect. Collegium's communications into Illinois to discuss the products, including potential returns, were about issues with the reverse distributors, who it argues are the proper beneficiaries of the return policy in the first instance. *See* [17] at 4; [16-3] at 225 (faulting Inmar for failing to comply with the return policy). Further, a crucial factor in considering a challenge to personal jurisdiction in a contract case is whether the defendant initiated contact. *See Telco Leasing, Inc. v. Marshall Cnty. Hosp.*, 586 F.2d 49, 52 (7th Cir. 1978). Here, there is no evidence that Collegium reached out to Walgreens with respect to the return policy, thus seeking (or expecting) to perform the contract in Illinois.

Merely contracting with an Illinois corporation is not enough to support personal jurisdiction. *Purdue Rsch.*, 338 F.3d at 785. And, in contrast to the data license agreement between the parties, which explicitly called for the application of Illinois law, there is no such choice of law provision relevant to the instant claim. [16-3] at 32; *see Purdue Rsch.*, 338 F.3d at 785 (noting that an agreement providing for the application of a state's law and contemplating that a substantial portion of the defendant's operations would take place in that state is strong evidence of sufficient minimum contacts). Defendant's contacts with Illinois are not clearly tied to the

9

subject matter of this case and are thus insufficient to confer specific personal jurisdiction. *See RAR*, 107 F.3d at 1278.[6]

The alleged breach claimed by Walgreens did not occur in Illinois. Walgreens alleges that Collegium, through Integrated Commercialization Solutions (not an Illinois domiciliary), frustrated returns that Walgreens attempted to perform through Inmar RX Solutions (not an Illinois domiciliary). Collegium's performance occurred outside of Illinois. Thus, Walgreens has failed to show that any negotiations, formation, or breach concerning the disputed contract occurred in Illinois.

Plaintiff has failed to make a prima facie case showing that defendant has sufficient minimum contacts with Illinois for personal jurisdiction to exist. I therefore do not reach their arguments for dismissal based on failure to state a claim. *See Kromrey v. U.S. Dep't of Just.*, 423 Fed. App'x 624, 626 (7th Cir. 2011) (unless both subject-matter and personal jurisdiction have been established, a district court must dismiss the suit without addressing the substance of the plaintiff's claim).

**IV. Conclusion**

Collegium Pharmaceutical's motion to dismiss, [9], is granted for lack of personal jurisdiction. Plaintiff has leave to file an amended complaint that cures the

---

[6] Neither case cited by plaintiff supports its argument for specific personal jurisdiction. *Kopfman v. Ensign Ribbon Burners, LLC*, 803 F.Supp.2d 914 (N.D. Ill. 2011) is a products liability case that relies on a "stream of commerce" theory of jurisdiction that is inapplicable in contract cases. *See J.S.T. Corp.*, 965 F.3d at 575–76. *Elorac, Inc. v. Sanofi-Aventis Canada Inc.*, 2014 WL 7261279 (N.D. Ill. Dec. 19, 2014) supports specific personal jurisdiction over a contract that was heavily negotiated in the forum state, which is not the case here. Indeed, *Elorac* goes on to state that communications into a forum state are *insufficient* where a contract was neither performed nor negotiated in the forum. *Id.* at 8.

jurisdictional defect by March 11, 2026. If no amended complaint is filed, the clerk will enter judgment terminating the case without prejudice.

ENTER:

                                                  _____
                                                  Manish S. Shah
                                                  United States District Judge

Date: February 18, 2026